**Reversed and Rendered; Opinion Filed August 20, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-12-01573-CV
_____

## KENNETH GUARINO AND CAPITAL VIDEO CORPORATION,
**Appellants**
### V.
## 11327 REEDER ROAD, INC., Appellee

On Appeal from the County Court at Law No. 5
Dallas County, Texas
Trial Court Cause No. CC-11-04197-E

### MEMORANDUM OPINION
Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Moseley

This is an interlocutory appeal from an order denying the special appearances of Kenneth

Guarino and Capital Video Corporation. 11327 Reeder Road, Inc. (Plaintiff) sued Guarino and

Capital for breach of contract, fraud, and conspiracy in connection with a lease dispute involving

Plaintiff's tenant, Media Consultants, LLC.

The background of the case and the evidence adduced at trial are well known to the

parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in

law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We conclude appellants

lack sufficient minimum contacts to support the exercise of personal jurisdiction over them. We

reverse the trial court's order and render judgment dismissing appellants from this suit for want

of personal jurisdiction.

## BACKGROUND

Plaintiff's president and sole owner is Bruce Kahn, a Texas resident. Plaintiff is the landlord on a lease with Media Consultants. Plaintiff alleged that in 2010, Media Consultants was in default on the lease and Plaintiff had locked Media Consultants out of the premises.

According to Kahn, Guarino, a Rhode Island resident, called Kahn to negotiate a modification of the lease. (Guarino had previously negotiated a modification of the lease in telephone calls with Kahn.) Kahn stated that Guarino assured him that Media Consultants intended to continue to operate on the premises and, if Plaintiff reinstated the lease, Media Consultants would honor the lease and pay all future rent when due. Plaintiff agreed and signed a modification of the lease with Media Consultants. The lease and the two modifications were signed by Dennis Nichols on behalf of Media Consultants. Nichols is the sole member of Media Consultants. Neither Guarino nor Capital were parties to the lease or the modifications.

Media Consultants regained possession of the premises, but failed to pay any rent. Media Consultants then filed bankruptcy in Rhode Island. At some time after the second modification, Media Consultants vacated the premises and removed its inventory and equipment. Kahn stated Guarino opened a new business nearby, operated by James Media, LLC, a Texas limited liability company. When Kahn inspected the new store, he discovered inventory and equipment that had been located on the lease premises before Media Consultants moved out.

Plaintiff filed this lawsuit against Guarino and Capital for breach of contract to recover the unpaid rent on Media Consultants' lease. Plaintiff alleged that Media Consultants, Capital, and James Media were owned and controlled by Guarino and were his alter egos. Plaintiff also alleged Guarino fraudulently induced it to enter into the second modification with Media Consultants. Plaintiff alleged Capital provided credit card processing for Media Consultants and conspired with Guarino to defraud Plaintiff by moving Media Consultants's credit card receipts

–2–

out of Texas.

Guarino and Capital filed sworn special appearances asserting they were non-residents and not subject to general or specific jurisdiction in Texas. Plaintiff filed a response attaching affidavits and other evidence. The trial court decided the special appearances without an evidentiary hearing. Thus, the trial court concluded Plaintiff alleged sufficient facts to establish general and specific jurisdiction over Guarino and Capital. The trial court denied the special appearances and filed written findings of fact and conclusions of law. This interlocutory appeal followed.

## STANDARD OF REVIEW

Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's ruling on a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If the trial court issues findings of fact and conclusions of law in ruling on the special appearance, the appellant may challenge the legal and factual sufficiency of the evidence to support the findings and appellate courts may review the legal and factual sufficiency of the evidence to support the findings. *See BMC Software*, 83 S.W.3d at 794. A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of the evidence to support the findings. *See id.* at 795. In conducting a factual sufficiency review, appellate courts may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand*, 180 S.W.3d 340, 345 (Tex. App.—Dallas 2005, no pet.).

## APPLICABLE LAW

### A. Personal Jurisdiction

Texas courts may exercise personal jurisdiction over a nonresident defendant if: (1) the

Texas long-arm statute permits the exercise of jurisdiction, and (2) the assertion of jurisdiction satisfies constitutional due process guarantees. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The long-arm statute reaches "as far as the federal constitutional requirements for due process will allow." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Thus, the long-arm statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations. *Id.* Personal jurisdiction over a nonresident defendant satisfies constitutional due process guarantees when (1) the nonresident defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly*, 301 S.W.3d at 657–58. There are three parts to the purposeful-availment inquiry: (1) only the defendant's contacts are relevant; (2) the contact must be purposeful, not random, fortuitous, or attenuated; and (3) the defendant must seek some advantage, benefit, or profit by availing itself with the forum. *See Moki Mac*, 221 S.W.3d at 575.

In addition to the purposeful-availment requirement, the defendant's contacts with the forum must give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). General jurisdiction allows the forum to exercise jurisdiction over a defendant even if the cause of action does not arise from or relate to the defendant's contacts with the forum. *Coleman*, 83 S.W.3d at 806–97. This minimum-contacts analysis is more demanding than specific jurisdiction; general jurisdiction is present when a defendant's contacts with the forum are continuous and systematic. *Id.*; *see also PHC-*

*Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166–69 (Tex. 2007) (describing detailed analysis required for general jurisdiction). Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state. *Moki Mac*, 221 S.W.3d at 575–76. The specific jurisdiction analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id*.

### B.     Special Appearance

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. Once the plaintiff has pleaded sufficient jurisdictional allegations, a nonresident defendant challenging personal jurisdiction in Texas must file a verified special appearance. *See* TEX. R. CIV. P. 120a. To prevail, the nonresident defendant must negate all grounds for personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. Whether the defendant has met the burden of negating the plaintiff's allegations of jurisdictional facts is determined based on a review of the entire record, not merely the pleadings. *Voltaix, LLC v. Ajongwen*, No. 05-12-00606-CV, 2013 WL 2360115, at *3 (Tex. App.—Dallas May 30, 2013, no. pet. h.). Pleadings frame the jurisdictional dispute, but are not dispositive. *Kelly*, 301 S.W.3d at 658 n.4. A special appearance is decided on the basis of the pleadings, stipulations, affidavits and attachments filed by the parties, the results of discovery, and any oral testimony at the hearing. TEX. R. CIV. P. 120a(3). Once the defendant meets its burden, the burden shifts back to the plaintiff to show the court has personal jurisdiction over the defendant as a matter of law. *Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120 (Tex. App.—Dallas 2010, no pet.).

The nonresident defendant can negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. A factual attack requires the defendant to present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* In a legal attack,

the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction because the defendant's contacts fall short of purposeful availment, the plaintiff's claims do not arise from the contacts (in cases asserting specific jurisdiction over the defendant), or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.*

If the plaintiff seeks to assert jurisdiction over a nonresident defendant under an alter-ego theory, the plaintiff has the burden of proving its alter-ego allegation. *PHC–Minden*, 235 S.W.3d at 173; *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 479 (Tex. App.—Dallas 2010, pet. denied). In the context of a parent and subsidiary corporation, the supreme court outlined the factors relevant to jurisdictional veil-piercing as follows:

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiff must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*PHC–Minden*, 235 S.W.3d at 175 (quoting *BMC Software*, 83 S.W.3d at 799).

### ANALYSIS

In three issues, Guarino and Capital argue the trial court erred by denying their special appearances because they are not subject to general or specific jurisdiction in Texas. Guarino stated in his affidavit that he is a resident of Rhode Island and has never been in Texas. Capital's affidavit, signed by John Bergantino, its vice president, stated that Capital is a Rhode Island corporation with offices in Rhode Island. Both Guarino and Capital denied contracting with a Texas resident, committing torts in Texas, or recruiting Texas residents for employment.

Plaintiff responds by arguing it pleaded and presented evidence of facts which, if true, support the exercise of general or specific jurisdiction over Guarino and Capital.

## A. Alter Ego

Although the trial court did not expressly find or conclude that Media Consultants was the alter ego of Guarino or Capital, Plaintiff relies in its appellate brief on the alter ego allegations to support the trial court's order. To do so, Plaintiff had the burden of proving its alter-ego allegation against Guarino. *See Ahrens*, 318 S.W.3d at 479.

There is evidence Guarino is the sole director and shareholder of Capital, but Capital is itself a nonresident. Further, an individual's standing as an officer, director, or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *Crithfield v. Boothe*, 343 S.W.3d 274, 285 (Tex. App.—Dallas 2011, no pet.).

The types of evidence a court will consider as proof of alter ego include: (1) the payment of alleged corporate debt with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *Id.* Plaintiff presented no evidence establishing any of these facts regarding Guarino and any of the entities alleged to be his alter ego. There is no evidence that Guarino is an officer, director, or owner of Media Consultants. Nor did Plaintiff present evidence that Guarino or Capital owns or controls Media Consultants to the extent necessary to pierce the corporate veil of Media Consultants.

We conclude Plaintiff failed to prove Media Consultants, Capital, or James Media are Guarino's alter egos. There is no evidence to support a finding of alter ego for jurisdictional purposes; therefore we look only to Guarino's and Capital's individual contacts with Texas to determine whether they are subject to personal jurisdiction.

**B. Guarino**

**1.      General jurisdiction**

A general jurisdiction analysis is very different from a specific jurisdiction inquiry and requires a more demanding minimum contacts analysis with a substantially higher threshold. *PHC-Minden*, 235 S.W.3d at 168. The defendant must be engaged in longstanding business in the forum approaching the relationship between the state and its own residents, typically requiring the defendant to have an office in the forum. *Id.* (discussing authorities).

Plaintiff alleged that prior to 2003, Kahn and Capital were co-owners of Shameless.net, LLC,[1] a Texas limited liability company, but all of Kahn's dealings regarding Shameless were with Guarino. Guarino made dozens of telephone calls to Kahn in Texas to discuss the business of Shameless and Media Consultants. Guarino also sent e-mails to Kahn discussing the business of Shameless and Media Consultants. Guarino called Kahn to solicit his help in promoting Guarino's sexually oriented businesses in Texas. In addition, Kahn stated that Guarino called him to negotiate the first and second modifications to Media Consultants's lease.

In *PHC-Minden*, the supreme court concluded a nonresident limited partnership owning a hospital in Louisiana was not subject to general jurisdiction in Texas. *PHC-Minden*, 235 S.W.3d at 170–71. Minden did not advertise in Texas, owned no property in Texas, and had no Texas office or bank accounts. *Id.* Its only contacts were that its employees attended seminars in Texas, it purchased from vendors with Texas addresses, and it had three contracts with Texas entities. *Id.* However, even when amassed, these contacts were not continuous and systematic contacts sufficient to support general jurisdiction. *Id.*; *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, 416 (1984) (company not subject to general

---

[1] In 2003, Capital transferred its interest in Shameless to Kahn as part of a settlement agreement regarding disputes over the ownership of Media Consultants.

jurisdiction even though it traveled to Texas and negotiated a contract for transportation in Texas, purchased eighty percent of its helicopter fleet and related equipment from Texas vendors at regular intervals, and sent pilots and other personnel to Texas for training); *Coleman*, 83 S.W.3d at 808–10 (sales to Texas residents, purchases from Texas vendors, contracts with Texas business, and attendance at conferences in Texas, did not establish a pattern of continuing and systematic activity).

Making telephone calls and sending e-mails about separate business entities in another state are not the types of continuous and systematic contacts that approach the relationship between the state and its own residents. *See PHC-Minden*, 235 S.W.3d at 171. The quality of Guarino's contacts with Texas—telephone calls and e-mails from out of state—do not support the exercise of general jurisdiction.[2] *See Coleman*, 83 S.W.3d at 810. We conclude Guarino's alleged contacts with Texas do not support the exercise of general jurisdiction. *See PHC-Minden*, 235 S.W.3d at 167–68; *Coleman*, 83 S.W.3d at 809.

## 2. Specific Jurisdiction

Regarding specific jurisdiction, the only contact that substantially relates to the operative facts of this litigation is the telephone call about the second modification where Guarino allegedly represented Media Consultants intended to continue operating on the premises and would pay all future rent under the lease. Plaintiff did allege Guarino caused Media Consultants to vacate and remove its inventory from the premises, James Media moved the inventory to its new location, and Guarino put Media Consultants in bankruptcy. But there are no allegations

---

[2] Plaintiff also alleged Guarino frequently referred to Kahn as his partner. Even assuming this allegation is sufficient to allege Guarino actually formed a partnership in Texas with Kahn, this fact does not support the exercise of personal jurisdiction over Guarino. A partnership's contacts are not imputed to its partners; thus, the fact of partnership (even it was sufficiently alleged) alone is insufficient to show purposeful availment by a partner. *See Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 16 (Tex. App.—Dallas 2008, no pet.).

any of these alleged acts of Guarino occurred in Texas.[3]  Indeed, the bankruptcy was filed in Rhode Island, not Texas.  Further, by structuring his transactions using separate Texas entities, such as James Media, Guarino individually sought to avoid the benefits and protections of Texas law.  *See Coleman*, 83 S.W.3d at 808 ("When a nonresident defendant purposefully structures transactions to avoid the benefits and protections of a forum's laws, the legal fiction of consent [to general jurisdiction] no longer applies.").

Although Guarino argues on appeal there is no evidence the representation was false when made, that is not the applicable standard.  *See Michiana*, 168 S.W.3d at 792 (specific jurisdiction does not turn on whether defendant's contacts were tortious).  We focus on the defendant's conduct and its relationship to the forum, not where the plaintiff relied on the alleged fraud.  *See Tabacinic v. Frazier*, 372 S.W.3d 658, 670 (Tex. App.—Dallas 2012, no pet.).  The defendant's contacts with Texas—not whether they are tortious—determine whether the exercise of jurisdiction is constitutional.  *See Michiana*, 168 S.W.3d at 788 ("Allegations that a tort was committed in Texas satisfy the Texas Long-Arm Statute, but not necessarily the U.S. Constitution; the broad language of the former extends only as far as the latter will permit.") (footnotes omitted).

In *Michiana*, the plaintiff ordered a recreational vehicle from Michiana.  The plaintiff alleged that Michiana employees made fraudulent representations about the vehicle in a telephone call.  *Michiana*, 168 S.W.3d at 788.  The supreme court considered whether suit can be brought in Texas based on a nonresident's alleged misrepresentations in a telephone call with a Texas resident, and concluded that it could not.  *Id.* at 784, 791–92.  The court overruled prior

---

[3] Even if the allegation can be construed to allege that Guarino physically traveled to Texas to move the inventory, Guarino's affidavit denied that he has ever been in Texas. Kahn's declaration merely states the conclusion, "James [Media] then set up shop in a new Texas location, moved all the equipment and inventory to the new Texas location, and Guarino put [Media] Consultants into bankruptcy."  However, Plaintiff does not contend on appeal that it plead or proved Guarino was ever physically present in Texas.

–10–

court of appeals' opinions that held specific jurisdiction was necessarily established by allegations or evidence that a nonresident committed a tort in a telephone call from a Texas number, or that specific jurisdiction turned on whether the defendant's contacts were tortious rather than the contacts themselves. *Id.*

Guarino's telephone call to Kahn where he allegedly made misrepresentations about Media Consultants, without more, is insufficient to show Guarino purposefully availed himself of the privilege of conducting activities in Texas sufficient to support specific jurisdiction. Specific jurisdiction is not necessarily established by evidence a nonresident defendant made misrepresentations in a single telephone call to a Texas resident. *Id.*; *City of Riverview, Mi. v. Am. Factors, Inc.*, 77 S.W.3d 855, 858–59 (Tex. App.—Dallas 2002, no pet.) (telephone call between non-resident city employee and Texas company was insufficient to establish minimum contacts with Texas). We conclude Guarino's alleged contacts with Texas do not support the exercise of specific jurisdiction.

## C. Capital

The record indicates that Capital was a party to a 2003 settlement agreement with Kahn and another entity whereby Capital transferred its ownership interest in Shameless to Kahn. In addition, Plaintiff alleged that Capital provided management services and credit card processing to three Texas entities, Shameless (prior to 2003), Media Consultants, and James Media.

The causes of action alleged in this litigation are not substantially related to these contracts. The operative facts of this litigation focus on Guarino's alleged fraudulent misrepresentation about Media Consultants's performance of the lease and his alleged involvement in causing Media Consultants's inventory to be moved from the premises. Plaintiff alleged that Capital's credit card servicing for Media Consultants was part of a conspiracy with Guarino to defraud Plaintiff, but the alleged conspiracy was between two nonresidents, Guarino

–11–

and Capital, and could have no jurisdictional significance. *See also Asshauer*, 319 S.W.3d at 17 (declining to recognize assertion of personal jurisdiction based solely on effects or consequences of alleged conspiracy with forum resident).

Even so, merely entering into a contract with a Texas entity is insufficient to support general jurisdiction. *See PHC-Minden*, 235 S.W.3d at 171 (three contracts with Texas entities were not continuous and systematic general business contacts sufficient to support general jurisdiction); *Asshauer*, 319 S.W.3d at 16 (merely contracting with a Texas corporation does not satisfy the minimum contacts requirement). Nor is performing services under a contract with a forum resident alone enough to support jurisdiction. *See Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417–18 (Tex. App.—Dallas 2008, no pet.).

Capital's alleged contacts with Texas are not the type of continuous and systematic general business contacts necessary to establish general jurisdiction. *PHC-Minden*, 235 S.W.3d at 171. Nor is its provision of management services to Media Consultants sufficient to show Capital purposefully availed itself of the privilege of conducting activities in Texas related to this litigation. *See Moki Mac*, 221 S.W.3d at 575; *Olympia Capital*, 247 S.W.3d at 419 (communications related to execution and performance of contract insufficient to establish minimum contacts necessary to support exercise of specific jurisdiction). We conclude Capital's alleged contacts with Texas do not support the exercise of general or specific jurisdiction.

## CONCLUSION

We conclude Plaintiff failed to plead or prove facts that, if true, establish Guarino and Capital purposefully availed themselves of the privilege of conducting activities in Texas. The trial court erred by concluding otherwise. Because Plaintiff's allegations are insufficient to support the exercise of either general or specific jurisdiction and Guarino and Capital proved they are not Texas residents, we sustain appellants' issues and reverse the trial court's order

denying the special appearances. We render judgment dismissing this lawsuit for lack of personal jurisdiction.

121573F.P05

/Jim Moseley/
JIM MOSELEY
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENNETH GUARINO AND CAPITAL
VIDEO CORPORATION, Appellants

No. 05-12-01573-CV          V.

11327 REEDER ROAD, INC., Appellee

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-11-04197.
Opinion delivered by Justice Moseley.
Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the trial court's order overruling special appearances is **REVERSED** and judgment is **RENDERED** that:

The special appearances of Kenneth Guarino and Capital Video Corporation are **GRANTED** and Kenneth Guarino and Capital Video Corporation are **DISMISSED** from this suit for want of personal jurisdiction.

It is **ORDERED** that appellants KENNETH GUARINO AND CAPITAL VIDEO CORPORATION recover their costs of this appeal from appellee 11327 REEDER ROAD, INC..

Judgment entered this 20th day of August, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE